UHLFELDER CO. ET AL. *v.* UNITED STATES (No. 2614) [1]

PARAGRAPH 382, TARIFF ACT OF 1922—"BRONZE POWDER"—"BROCADES"—"ALUMINUM POWDER."

Finely divided metal was classified as "bronze powder," under paragraph 382, Tariff Act of 1922, and protests claiming it to be brocades, flitters, metallics, or aluminum powder thereunder were overruled. The weight of the evidence shows some of it to be brocades and the rest to be aluminum bronze powders. The overruling of the protests is reversed as to the first class and affirmed as to the second.

United States Court of Customs Appeals, March 27, 1926

APPEAL from Board of United States General Appraisers, Abstract 49172

[Affirmed in part and reversed in part.]

*Comstock & Washburn* (*Geo. J. Puckhafer* of counsel) for appellants.
*William W. Hoppin* and *Charles D. Lawrence*, Assistant Attorneys General (*Oscar Igstaedter*, special attorney, of counsel), for the United States.

[Oral argument December 17, 1925, by Mr. Puckhafer and Mr. Igstaedter]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

SMITH, Judge, delivered the opinion of the court:

Certain metallic substances imported at the port of New York and classified by the collector of customs as bronze powders, were assessed with duty at 14 cents per pound, under that part of paragraph 382 of the Tariff Act of 1922, which reads as follows:

PAR. 382. Aluminum or tin foil less than six one-thousandths of an inch in thickness, 35 per centum ad valorem; bronze powder, 14 cents per pound. * * *

The importers protested that the metallic substances were not bronze powders, but were either *brocades*, flitters, metallics, or *aluminum powder*, and that they were, therefore, dutiable at 12 cents per pound under that part of paragraph 382, which reads as follows:

PAR. 382. Aluminum or tin foil less than six one-thousandths of an inch in thickness, 35 per centum ad valorem; * * * aluminum powder * * * brocades, flitters, and metallics, manufactured in whole or in part, 12 cents per pound. * * *

---

[1] T. D. 41483.

The Board of General Appraisers found that the merchandise, on and prior to September 22, 1922, was uniformly and generally recognized by the trade and commerce of the country as aluminum bronze powder and therefore overruled the protest.

From the judgment of the board the importer appealed and now contends, first, that the goods described in W. H. B. entry 58586, covered by protest 969832, the goods contained in cases numbered 14516 to and including 14541 of entry 794132, covered by protest 978085, the goods contained in cases 162, 164, 165 of entry 772369, covered by protest 978389, and the goods in case 268 of entry 788916 included in protests 977445 and 978389, are brocades, a species or class of bronze powders; second, that the goods specified in entry 763367 and in protest 969832 and the goods mentioned in entry 814152 and covered by protest 979938 and the goods contained in cases 168 to 177, and 182 of entry 772369 and 264, of entry 788916, covered by protests 978389 and 977745, are aluminum powder.

W. F. Hoffman, a witness for the importers, testified that the goods in cases 162, 163, 164 and 165, and 268 of entries 772369 and 788916, were brocades; that brocades were produced by stamping aluminum and were more brilliant than aluminum reduced to powder by grinding; that brocades were used for printing by lithographers, manufacturers of wall paper, and printers in general; that cases 166, 167, and 267 were bronze powders, and cases 177, 182, and 264 were aluminum powders; that bronze was a composition of copper and zinc or some other metal; that he did not know whether the trade recognized a difference between aluminum bronze powder and aluminum powder, but that he had heard the term bronze powder used in the trade.

John Raabe testified for the importers that samples from cases 14516 to and including 14541 were brocades and were so invoiced, with the exception of five cases; that there was a difference between aluminum bronze powder and aluminum powder commercially; that he had handled both aluminum powder and aluminum bronze powder; that aluminum bronze powder was finer than aluminum powder, and that that was the only difference between the two powders; that aluminum powders were used to paint chandeliers and radiators, whereas aluminum bronze powders were used for striping metal, for boat work, and wherever a fine finish was required.

Leo Uhlfelder testified that brocades were produced by stamping and were coarser than bronze powders, which were made by grinding the material between steel or stone rollers; that, if a powder is very fine, it is a bronze powder; that, if the powder is coarse and has a lot of brilliance, it is a brocade; that brocades are incorrectly called bronzes; that there is no such thing as an aluminum bronze powder; that the trade sometimes called aluminum powders aluminum

bronzes, but that the trade term was a misnomer and was incorrect; that so-called gold bronzes and aluminum bronzes were not real bronzes.

All three witnesses for the importers testified that a brocade was a species of *bronze* which was produced by a stamping, and not by a grinding process; that brocades were always coarser and more brilliant than aluminum bronzes, which were made by grinding aluminum between steel or stone rollers. That ground bronzes were much finer and duller than brocades.

Erwin J. Rothein, a witness for the Government, testified that cases 162, 165, 166, 167, 267, 268, and 1162 were bronze powders and not brocades; that the goods in cases G–177, 182, and 264 were aluminum bronze powders. Rothein stated very positively that *both* brocades and bronze powders were produced by a stamping process; that, by stamping aluminum, there was first produced a coarse bronze powder which was a brocade, and that, by continuing the stamping, the brocade became a bronze powder. He admitted, however, that he rarely sold brocades and stated that he had never heard that bronze powders were produced by grinding.

Six witnesses for the Government testified that there were two classes of ground aluminum, one of which was known to the trade as bronze powder and the other as aluminum powder; that bronze powder was smooth, greasy, and slippery to the touch, and felt like graphite when passed through the fingers; that aluminum powder was not greasy, but dry, and felt like sugar or sand; that aluminum bronze powder and aluminum powder had distinctly different uses; that aluminum bronze powder was used for the manufacture of paints, inks, and fireworks, whereas aluminum powder was used in the extraction of metals in the manufacture of explosives, illuminating bombs, and articles for pyrotechnic displays; that bronze powder was also used as a catalytic and as a chemical reagent; that merchandise such as that imported was known to the trade and bought and sold at wholesale throughout the United States as aluminum bronze powder.

The samples in evidence of the goods claimed by the importers to be brocades disclose to the naked eye, and markedly under the magnifying glass, that they are more brilliant and coarser than the powders manufactured by grinding. The samples in evidence referred to by the Government's witnesses as aluminum bronze powders and manufactured by grinding are much finer than the brocades, have no brilliancy, and are very smooth and greasy to the touch.

After a careful consideration of all the testimony and the samples in the case, we are of the opinion that the weight of the evidence establishes, first, that the goods contained in cases 162, 163, 164, 165,

268, 14516 to and including 14520, 14522 to and including 14541, and all goods represented by the samples marked case G–162, 163, 164, 165, and 268 are brocades, and that, as they are *eo nomine* provided for in paragraph 382, they should have been assessed with duty at 12 cents per pound instead of 14 cents per pound; second, that all the rest of the merchandise is known to the trade and bought and sold in the trade in the usual wholesale quantities as aluminum bronze powders and is therefore dutiable as assessed by the collector.

The judgment of the Board of General Appraisers is therefore *reversed* as to the merchandise which we hold to be brocades, and in all other particulars said judgment is *affirmed.*