UNITED STATES *v.* MASSCE & CO., INC. (No. 3284)[1]

T. D. 44005

United States Court of Customs and Patent Appeals, April 29, 1930

*Charles D. Lawrence*, Assistant Attorney General (*Peter A. Abeles* and *Oscar Igstaedter*, special attorneys, of counsel), for the United States.
*Comstock & Washburn* (*George J. Puckhafer* of counsel) for appellee.

[Oral argument April 17, 1930, by Mr. Igstaedter and Mr. Puckhafer]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:

The importation concerned with this Government appeal was classified by the collector of customs as bronze powder at 14 cents per pound under paragraph 382 of the Tariff Act of 1922, and the importer claimed the merchandise to be brocades dutiable at 12 cents per pound under the same paragraph of the act. Paragraph 382 in full follows:

PAR. 382. Aluminum or tin foil less than six one-thousandths of an inch in thickness, 35 per centum ad valorem; *bronze powder*, 14 cents per pound; aluminum powder, powdered foil, powdered tin, *brocades*, flitters, and metallics, manufactured in whole or in part, 12 cents per pound; bronze, or Dutch metal, or aluminum, in leaf, 6 cents per one hundred leaves. The foregoing rate applies to leaf not exceeding in size the equivalent of five and one-half by five and one-half inches; additional duties in the same proportion shall be assessed on leaf exceeding in size said equivalent. [Italics ours.]

One of the Government's witnesses, who, for 40 years in this country, had manufactured bronze powder and was familiar with the different processes and stages of manufacture in this country, testified as follows:

Q. Please describe it as briefly as you can and in such detail as is necessary.—
A. Bronze powder is made from a composition of two metals as a rule, 85 per centum copper and 15 per centum of high-grade zinc or spelter. These two metals are melted into one mass and then we break up the molten mass by a stream of water, which hits the molten mass and breaks it up in thicknesses from a pin head up to the size of a large marble, lumps of all sizes. After these lumps have been cooled off through the water stream, they get washed so as to remove every

impurity and then these metal lumps are being placed under crushers, the heavy type hammers we call crushers. The heaviest type hammers; we call them crushers in our factory. After the metal has been crushed, then it is transferred into stampers and we have three different styles of stampers; heavy stampers, medium, and light. As the metal gets reduced from one stage to the other we transfer it accordingly in these different styles of stampers, because the lighter stampers produce a better powder than the heavier ones, and while it is being made, it is being sifted from one process to the other. After the metal has been reduced to bronze powder, it is generally being polished, and if necessary, if the occasion requires it, it being colored in the desired shade of color. This is practically the manufacture of bronze powder.

This same subject matter was before the lower court and this court in *Uhlfelder Co. et al.* v. *United States*, 13 Ct. Cust. Appls. 636, T. D. 41483. According to this record, part of the merchandise involved in that suit was identical with the merchandise in this case. On the evidence in that case, the court below and this court held the merchandise to be dutiable under the brocades provision of the paragraph.

The issue was again tried in the lower court in *B. F. Drakenfeld & Co. et al.* v. *United States*, T. D. 42559, 53 Treas. Dec. 76. The Government there introduced the testimony of additional witnesses, the importer relying upon the testimony in the *Uhlfelder* case, which record was incorporated in the record of the *Drakenfeld* case. Some of the importer's witnesses who testified in the *Uhlfelder* case were produced for cross-examination and testified at length again in the *Drakenfeld* case. The *Uhlfelder* case was decided in the court below in April, 1925. The *Drakenfeld* case was decided in March, 1927. No appeal in the latter case was taken.

At the trial of the *Drakenfeld* case, counsel for importer complained that the customs officers had ignored the mandate of this court and had continued to classify the merchandise as bronze powder and to assess duty at 14 cents per pound, even though the records disclosed that no instructions so to do had been given them, with a view of further legal proceedings. This criticism, especially when applied to the case at bar, is not without considerable justification.

In the entries involved in this case the Government again decided to contest the issue in the courts, and at the trial below introduced additional witnesses who were, or had been, associated with the domestic manufacture and sale of bronze powder, etc. The importer relied upon the testimony of the witnesses introduced in the *Uhlfelder* case and the record in the *Drakenfeld* case. The court below, in a very well-written opinion by Fischer, Chief Justice, held for the third time that the merchandise was brocades and said:

We have carefully read the testimony which the Government introduced herein with a view of overcoming, if possible, our decision in the *Drakenfeld* case, *supra*. At best, such testimony is largely cumulative and discloses no facts which were not before the court in the previously decided case.

We have read carefully the testimony introduced in the trial below of the case at bar and the records of the former cases which were duly incorporated into the record of the instant case. The testimony of the various witnesses is unusually conflicting and confusing. Some of the witnesses in the early stages of this series of lawsuits were importers and at later trials were manufacturers. Their testimony is not only conflicting with the testimony of other witnesses, but the testimony of some witnesses given in one trial is, in some instances, in direct conflict with their own testimony given in another. Most of the testimony shows the coloring of the interests of the witnesses.

Importer's counsel in this court takes the position that the controverted merchandise is a brocade and that, while a brocade may be a form of bronze powder, all bronze powders are not brocades; that "brocades" is a narrower designation for the merchandise than the more general term "bronze powder"; that brocades are an intermediate stage between the first crushing of the metal and the final product, bronze powder, brocades being coarser and brighter, and that they are used for coarser work where brightness is required, such as for wall paper, etc.; that the kind of bronze powder which is not a brocade has been further processed and is used for striping and lining and making inks and paints. The testimony of importer's witnesses and some of the testimony of the Government's witnesses supports this view.

It was originally the contention of the importer, and its contention is supported by some of its witnesses, that the finest grades of bronze powder are not only stamped and crushed but are ground, and that bronze powder which has been further advanced than brocades by virtue of its being ground into very fine particles becomes dull in color and that brocades are never ground and are bright, and that the goods at bar are bright. This line of argument was not emphasized in this court. The weight of the evidence in this case is to the effect that very fine grades of bronze powder were being made in this country on the date of the testimony and had been made for a long time prior thereto by the process of stamping, sifting, and brushing.

In this case the Government seems to take the position that there is no such thing as a brocade and that there was nothing known as brocades in the commerce of the country on and immediately prior to the date of the passage of the Tariff Act of 1922. On this question, the Government's witnesses are in hopeless conflict not only with importer's witnesses but as between themselves. The evidence in the different cases, we think, shows that the use of brocades in the making of wall paper was greatly reduced near the date of the passage of the act of 1922; that for some reason the makers of wall paper ceased to use brocades in any considerable quantities and that some of the

·dealers in bronze powder, etc., had no calls for and did not sell any brocades, while with others, brocades constituted a very small part ·of˙their business and the use of same was chiefly confined to coarse decorations, radiator painting, etc.

In the Tariff Act of 1897 there was no provision for brocades, but paragraph 175 of the act contained a provision for bronze powder. In the Tariff Act of 1909 we find in paragraph 175: "Bronze powder, ·brocades, flitters, and metallics, twelve cents per pound." In paragraph 146 of the Tariff Act of 1913 we find: "Bronze powder, bro- ·cades, flitters, and metallics," etc., "25 per centum ad valorem," while in the Tariff Act of 1922 it will be noticed that bronze powder is made dutiable at 14 cents per pound while brocades, flitters, etc., are provided for at 12 cents per pound. Congress has distinguished in every act where brocades are mentioned between brocades and bronze powder, and in the act of 1922 it has distinguished between them in the rate of duty to be charged.

In Tariff Information Surveys, published in 1921, page 9, is information which was before Congress while engaged in the preparation of the disputed paragraph, and follows:

*Description and uses.*—Bronze powders, flitters, and metallics are powdered metal of extreme fineness. Bronze powder is the base for all bronzing and gilding paints and inks; and metallics, flitters, and brocades are used in the ·manufacture of ornaments, cards, and wall paper.

At page 10 thereof is found the following:

*Brocades, flitters, and metallics* are metal flakes not as finely divided as bronze powders, and therefore less expensive. They are used to produce a gilded effect ·on cards and ornaments and in wall-paper manufacture.

In this connection it may also be pointed out that in the Summary of Tariff Information, 1921, at page 521, Congress also had before it the following provision:

BRONZE POWDER, ETC.

*Description and uses.*—Bronze powder is a pulverized metal varying in color from pale yellow to dark red; the color depends chiefly upon the proportions of the copper and zinc. It is sometimes made from brass clippings, or "schrote," which are hammered for hours to reduce them to a powder. *Brocades are of the same quality with the same uses.* (G. A. 5113, T. D. 23635, of 1902.) Metallics ·or metallic flitters consist of small particles of lame, used chiefly for the manufacture of wall paper. Flitters are made by reducing thin sheets of brass to flakes; this material is sprinkled over surfaces to produce a sparkling effect. They differ from bronze powder only in that the latter has been hammered for a much longer period and is, therefore, more finely divided and more expensive. * * * [Italics ours except the first.]

It will be noticed that the United States Tariff Commission stated, "Brocades are of the same quality with the same uses. (G. A. 5113, T. D. 23635, of 1902)." The decision of the Board of U. S. General

Appraisers there cited was under the Tariff Act of 1897, which contained no *eo nomine* provision for brocades. It was there held, on the testimony in the case, that brocades were a species or variety of bronze powder and that they had the same qualities and uses as bronze powder, and the court held that the dictionary definitions supported that conclusion. The fact that Congress in the 1922 act distinguished between bronze powder and brocades in the rate of duty provided, and had before it the other information herein set out, would seem to indicate that it did not accept and act upon the finding in the Treasury decision cited.

It is not improbable that Congress put the lower rate on brocades for the reason that they were less highly processed than were the finer grades of bronze powder.

It may be that new processes of manufacture eliminating grinding, and the change in commercial use, would suggest that possibly this particular merchandise on the date of trial or even at the time of the passage of the tariff act was not a brocade, but the evidence as a whole does not show such fact. The lower court and this court concluded in the *Uhlfelder* case that the importer had proved his case, and the court below in the *Drakenfeld* case and in this case, after patiently and exhaustively considering the Government's position, has held that the evidentiary situation in the *Uhlfelder* case has not been changed.

We can not say that the decision of the court below is contrary to the weight of the evidence. True enough, a number of the Government's witnesses insist positively and earnestly that the exhibits in this case were never known as brocades, but most of them say that they never heard of brocades, and that if the term was ever used in the commerce of this country, it was obsolete when the Tariff Act of 1922 was passed. In view of testimony in conflict with this, we can not assume that Congress used a term unknown to those familiar with the trade in this kind of merchandise.

The judgment of the United States Customs Court is *affirmed.*